Joseph B. King, Jr. v. Commissioner.
King v. Commissioner
Docket Nos. 31842, 31843.
United States Tax Court
1952 Tax Ct. Memo LEXIS 66; 11 T.C.M. (CCH) 1002; T.C.M. (RIA) 52298; October 16, 1952
*66 Symington P. Landreth, Esq., 1404 Girard Trust Bldg., 1400 S. Penn. Square, Philadelphia, Pa., for the petitioner. Max J. Hamburger, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: In these consolidated proceedings respondent has determined the following deficiencies in income tax: Docket No.
Year
Deficiency
31842
1946
$5,803.05
31843
1947
4,774.63
The only issue is whether petitioner is entitled to deduct the sum of $15,000 in the year 1946 and $15,600 in the year 1947 as business bad debt deductions. In determining the deficiencies the respondent disallowed these two deductions and in addition made other adjustments to petitioner's net income. No issue has been raised as to the other adjustments. Findings of Fact Some of the facts were stipulated and are so found. Petitioner is an individual presently residing in Hollywood, Florida. During the years 1946 and 1947 petitioner resided in Philadelphia, Pennsylvania, and filed his income tax returns for these years with the collector of internal revenue for the first district of Pennsylvania. Petitioner was first employed by the Caskey Foundry *67 Company, a Pennsylvania corporation, in 1939 and remained in the company's employ until 1949, when an involuntary petition in bankruptcy was filed against the company. In 1940 petitioner was employed as the company's manager and his annual salary was $1,040. In 1941 petitioner was made president and continued to serve in that capacity until 1949. His salary as president in 1946 was $5,200 and in 1947 was $4,250. When petitioner was first employed by the company in 1939 he held a nominal stock interest. During the subsequent years his stock interest in the company increased so that in the years before us petitioner held approximately 70 per cent of the company's outstanding stock. The earning record of the company is as follows: Year
Gross Sales
Profit or (Loss)
1938
$ 58,502.36
($ 2,127.56)
1939
46,388.01
( 12,707.24)
1940
80,530.61
( 3,317.13)
1941
159,750.28
8,564.56
1942
259,353.73
( 13,963.93)
1943
250,000.00 *
6,018.70
1944
264,129.70
( 18,443.50)
1945
165,001.78
( 34,607.99) **
1946
214,259.27
( 39,055.30)
1947
118,463.88
( 33,460.32)
1948
99,164.63
( 20,781.81)
1949 6 mos.
5,550.87
( 7,485.07)
*68 For the years 1944 and 1945 petitioner advanced to the company an aggregate of $44,550.92 and the company repaid him $6,950. In 1946 he advanced $200 to the company and was repaid $2,025.92. In 1947 he advanced $21,119.45 and was repaid $1,811.23. In 1948 he advanced $2,829.10 and was repaid $1,037.76. These advances to the company were unsecured and were made by petitioner's personal check. Some of the checks contained the notation "Loan" or "Advance" on the lower left hand corner of the check. No arrangement was made to pay interest on the money advanced to the company, nor was any interest paid on these advances. In 1946 the company increased its capitalization by issuance of approximately $16,000 worth of additional capital stock. This stock was given to the petitioner in consideration for past advances to the company. In the same year petitioner claimed a business bad debt deduction of $15,000. In the next year, 1947, petitioner claimed a business bad debt deduction of $15,600. In 1949 a bankruptcy proceeding was instituted against the company and it was later adjudged bankrupt. During the bankruptcy proceeding, petitioner filed a "Proof of Claim" in the amount of $57,912.32 *69 which was the full amount of all advances made by him up to November 30, 1948. This sum also included the $15,000 and the $15,600 which were taken as bad debt deductions on the 1946 and 1947 tax returns. The petitioner received no payment upon his claim in the bankruptcy proceedings. Opinion The sole issue before us is whether petitioner is entitled to business bad debt deductions of $15,000 for 1946 and $15,600 for 1947. Section 23 (k) of the Internal Revenue Code allows a deduction for a bad debt which became worthless during the taxable year. However, the burden of proving that the debt is worthless rests upon the petitioner. See Walter J. Runyon, 8 T.C. 350, 356. The petitioner contends that he made loans to the Caskey Foundry Company over a period of years and that in 1946 and 1947 a portion of the debts resulting from these loans became worthless and therefore deductible in those years. On the other hand, respondent first contends that the deductions claimed by the petitioner did not constitute bad debts within the purview of section 23 (k) of the Code. Respondent further contends that these were not business bad debts under section 23 (k) *70 (1), nor were they nonbusiness bad debts within the scope of section 23 (k) (4). Under section 23 (k) (1) and (4) the petitioner is only entitled to a bad debt deduction when he proved that the debts became worthless within the taxable year. Without deciding whether the advances made to the company by petitioner created a debtor-creditor relationship, and without considering respondent's suggestion on brief that the advances made were in the nature of a capital contribution, the evidence, in our opinion, is not sufficient to sustain a finding that the alleged debts became worthless within the taxable year. The respondent, therefore, must be sustained in his determination. A resume of the facts will demonstrate the basis for our conclusion. At the beginning of 1946 there was an aggregate sum of $37,600.92 which the petitioner had advanced to the company over and above the company's payments offsetting his prior advances. During 1946 the petitioner advanced some $200 to the company. However, during this year the company paid petitioner $2,025.92 against prior advances and gave him an additional $16,000 worth of capital stock. The stock was given in consideration for past advances. *71 Thus it appears that in one year the company was able to offset almost half of the aggregate advances petitioner made to it over a period of three years. These facts refute petitioner's conclusion that $15,000 of the alleged loan of $37,600.92 became worthless in 1946. On the contrary, from these facts alone, and we have no others, it would appear that the outlook for the company was optimistic rather than pessimistic. It is also evident that petitioner, except for his bad debt deductions, took an optimistic view of the company's future. For in 1947 petitioner advanced an additional $21,119.45 to the company, and likewise in 1948 he continued to make additional advances. During this time the company consistently made partial payments to petitioner for the purpose of offsetting these advances. These facts do not prove the reasonableness of petitioner's conclusion that the alleged debts were worthless in whole or in part. See Reading Co. v. Commissioner, 132 Fed. (2d) 306, 309, affirming memorandum opinion of the Tax Court. These facts tend to prove quite the contrary, for advances in 1947 and 1948 are incompatible with the concept of worthlessness in 1946 and 1947. See *72 Squier v. Commissioner, 68 Fed. (2d) 25, 27, affirming 26 B.T.A. 1407. Furthermore, since petitioner continued to make advances to the company during the years before us, and since he has failed to prove an identifiable event which would indicate a change in the alleged debtorcreditor relationship so as to make the alleged debts worthless, we can not sustain petitioner's conclusion as to their worthlessness or even their partial worthlessness in the years before us. See Meltzer v. Commissioner, 154 Fed. (2d) 776, affirming memorandum opinion of the Tax Court [4 TCM 638]. Decisions will be entered for the respondent. Footnotes
*. Approximately. ↩
**. Wrote off 15,494.75.↩